UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALFRED MOON, ALFRED MOON, JR.,
CHERYL MOON and MEGAN WHITE,

    Plaintiffs/Counter-Defendants,

v.                                                    CASE NO. 8: 13-cv-02782-EAK-EAJ

MEDICAL TECHNOLOGY ASSOCIATES,
INC.,

    Defendant/Counter-Claimant.
_____/

## ORDER GRANTING IN PART, AND DENYING IN PART, MEDICAL TECHNOLOGY ASSOCIATES, INC.'S PRELIMINARY INJUNCTION

This cause comes before the Court on Counter-Claimant's, MEDICAL TECHNOLOGY ASSOCIATES, INC. ("MTA"), Motion for Preliminary Injunction and incorporated memorandum of law, (Doc. # 8), filed December 20, 2013, Counter-Defendants', ALFRED MOON, ALFRED MOON, JR., CHERYL MOON, and MEGAN WHITE (collectively "Respondents"), Memorandum in Opposition, (Doc. # 18), filed January 22, 2014, and oral argument held February 7, 2014. For the reasons that follow, the Motion for Preliminary Injunction is **GRANTED** in part, and **DENIED** in part.

I.    **Findings of Fact**

    A.    **The Parties**

MTA is a national healthcare compliancy testing, service, and equipment provider, with offices and service centers located throughout the United States. (Doc. # 9, Marks Decl., ¶4). MTA provides medical gas pipeline equipment, repairs, and services to numerous businesses in the healthcare community, as well as system testing and construction certification, preventative

maintenance programs, medical gas pipeline full system repair and service, medical air compressor and vacuum pump rebuild services, and ventilation surveys of critical care areas, patient rooms, operating rooms, and laboratories. Id. at ¶ 5. MTA also markets and sells medical gas plumbing certification courses. Id. at ¶6.

On July 7, 2008, MTA purchased Moon Medical, Inc.'s ("Moon Medical") tangible and intangible assets, including goodwill and its entire list of customers from Mr. and Mrs. Moon, that corporation's sole shareholders, directors, and officers. (Doc. # 9, Petrunick Decl., ¶¶3–5). Mr. and Mrs. Moon, their daughter, Megan White ("Ms. White"), and their son, Alfred "Chip" Moon, Jr. ("Mr. C. Moon"), were all employees of Moon Medical. Id. at ¶3. Moon Medical was a direct competitor of MTA. Id.

As part of this transaction, MTA employed the Respondents; Mr. Moon became Regional Manager for MTA's Midwest Region, which included Kansas, Missouri, Nebraska, and Iowa. Id. at ¶6. MTA later promoted Mr. Moon to Director of Field Development, which had a national scope. Id. MTA employed Ms. White in the position of Bid and Special Sales/Project Management, and eventually MTA employed Mr. C. Moon in the position of Facility Sales. Id. at ¶8–9. The Respondents were responsible for MTA's Midwest Region, although each also worked for particular longtime customers of Moon Medical—and MTA by way of MTA's purchase of Moon Medical—in other states, including, but not limited to, Oklahoma, Wisconsin, Texas, South Dakota, and Louisiana. Id. at ¶ 8–10. Mrs. Moon's employment with MTA ended on or about May 31, 2010. Id. at ¶28. Mr. Moon, Ms. White, and Mr. C. Moon resigned from MTA by October 2013. (Doc. # 9, Marks Decl., ¶16).

### B. MTA's Confidential Information

MTA devotes a significant portion of its financial and other resources to developing and maintaining confidential and proprietary information, including information about MTA's business plans, financial data, sales and marketing information, and customer, supplier, and employee information, which is of great value to MTA. Id. at ¶7-8; (Doc. # 9, Petrunick Decl., ¶30). MTA derives independent economic value from this information not being generally known to, and not readily ascertainable by proper means by, its competitors. (Doc. # 9, Marks Decl., ¶9).

MTA goes to great lengths to maintain the secrecy of its confidential business information, including requiring employees to sign confidentiality agreements, as well as the use of password-restricted computers and software. (Doc. # 9, Petrunick Decl., ¶31). MTA does not provide access to this confidential business information to members of the general public, competitors in the industry, non-employees, or other persons or entities not subject to a confidentiality agreement. (Doc. # 9, Marks Decl., ¶10; Doc. # 9, Petrunick Decl., ¶32).

### C. The Respondents' Agreements

In consideration for MTA's purchase of Moon Medical's assets and continued employment, Mr. and Mrs. Moon each entered into contracts that contain restrictive covenants. (Doc. # 9, Petrunick Decl., ¶11). In partial consideration for his continued employment and subsequent promotion, in 2013, Mr. Moon entered into Confidentiality, Non-compete, and Non-solicitation Agreement with MTA. Id. at ¶14. In consideration for their respective continued employment, Ms. White and Mr. C. Moon also each entered into Confidentiality, Non-compete, and Non-solicitation Agreements with MTA. Id. at ¶¶21, 24. These agreements each contain restrictions against competition, disclosure and use of confidential information, and interference with MTA's substantial relationships with its customers and suppliers. Id. at ¶11-12, 14, 21, 24.

The Agreements' restrictive covenants protect legitimate business interests, including MTA's confidential information and the substantial business relationships with which MTA has with existing customers and suppliers, which are reasonable in duration, geographic scope, and lines of business restrained.

### D. The Respondents' Wrongful Conduct

The Respondents breached their respective agreements' restrictive covenants. After ending her employment with MTA, Mrs. Moon opened and has continued to operate The William Rowland Corporation ("TWRC"), which "markets" medical gas trainings for a South Carolina-based company. (Doc. # 9, Brons Decl., ¶25–27; Zeit Decl. ¶8–9; Marks Decl. ¶15; Doc. # 18, p. 5). By "marketing" these services, Mrs. Moon violated and continues to violate the Non-compete agreement by aiding people engaged in the medical gas pipeline testing and certification business, which competes against MTA.

The Respondents have wrongfully competed against MTA, and continue to do so, within the restricted geographic area. (Doc. # 9, Miller Decl., ¶¶13–16; Zeit Decl. ¶5, ¶¶9–14; Dolak Decl. ¶¶5–11). The Respondents also incorporated Advanced Compliance Solutions ("ACS"), which engages in direct competition against MTA, including sales and installation of medical gas equipment, and testing and certification services. (Doc. # 9, Brons Decl., ¶28). The Respondents have solicited and interfered with substantial relationships MTA has with its customers, about which the Respondents obtained knowledge due to their employment with MTA. (Doc. # 9, Brons Decl., ¶¶11–40; Miller Decl. ¶¶21–22; Zeit Deel. ¶¶10–12; Dolak Decl. ¶¶5–11).

### E. MTA Has Been and Continues To Be Harmed

As a direct result of the wrongful activity—including Respondents' interference with MTA's long-time customers—MTA has suffered monetary damages and impact to its goodwill, including the loss of customers who are now doing business with TWRC and ACS, rather than

MTA. (Doc. # 9, Marks Decl., ¶¶17–18; Miller Decl. ¶¶13–15; Brons Decl. ¶¶11–40; Dolak Decl. ¶¶5–11). Specifically, immediately preceding Respondents' departure, MTA was bidding a job for Spearfish Regional Hospital, which included a $20,995.00 air compressor, for which the Respondents knew the cost and price, and used that information to underbid MTA. Moreover, two former Moon Medical customers—J.M. Brennan and Titan Plumbing—substantially ceased conducting business with MTA following the Respondents' departure. Titan Plumbing conducted $276,000.00 in business with MTA in 2012, $93,000.00 in 2013, and no business since the Respondents' departure. Similarly, J.M. Brennan conducted $64,000.00 in business with MTA in 2012, $83,000.00 in 2013, and just $612.00 since the Respondents' departure.

## II.   Analysis

MTA has demonstrated a likelihood that it will prevail on the merits of its breach of contract claim against the Respondents—the Respondents competed against MTA by engaging in activities that had the effect of directing business away from MTA within the restricted area; used and disclosed MTA's confidential information; solicited and attempted to solicit MTA customers; and interfered with customers with whom MTA had a substantial relationship about which the Respondents obtained knowledge by reason of their employment with MTA.

MTA has suffered irreparable harm and further irreparable harm will occur, if this preliminary injunction does not issue. As argued at the February 7, 2014, hearing, the Respondents do not dispute they are actively competing against MTA; rather the Respondents argue the respective agreements against competition between themselves and MTA do not restrict the Respondents' current competitive behavior. Based on this argument alone, it is clear MTA will suffer further irreparable harm—the Respondents admittedly used confidential information to steer business away from MTA during a bid for Spearfish Regional Hospital, which included the

proposed sale of a $20,995.00 air compressor. Ms. White specifically contacted a supplier, specified the cost for the compressor must be less than MTA's $20,995.00 bid component, and emailed these requirements to the supplier. Further, Mr. Moon and Ms. White worked in concert to divert an inspection job worth approximately $1,500.00 with J.M. Brennan, Inc., from MTA to the Respondents' business. This customer was a long-time customer of Moon Medical, and despite this customer enumerating his bases for preference with the Respondents and lack of confidence in MTA, MTA acquired this customer through its purchase of Moon Medical, and Respondents subsequently interfered with MTA's relationship with this customer through the use of confidential information and in violation of the restrictive covenants in Respondents' respective agreements. While the Respondents may have initially developed and fostered the relationship with J.M. Brennan and other similar customers, the Respondents forfeited these relationships—albeit temporarily and for the duration of the restrictive covenants—when they sold their interests to MTA and entered into the agreements containing restrictive covenants.

The balancing of equities as between MTA and the Respondents favors the issuance of this preliminary injunction. MTA is losing customers, revenue, and goodwill; whereas the Respondents may continue in business that is not in violation of their respective agreements.

Entry of a preliminary injunction will not disserve the public interest because the public has a cognizable interest in the protection and enforcement of contractual rights.

This preliminary injunction is necessary to preserve the status quo between the parties pending the resolution of this matter on the merits.

Based on the foregoing, this Court finds that Counter-Claimant MTA has satisfied all requirements for the issuance of a preliminary injunction.

Accordingly, it is **ORDERED** and **ADJUDGED** that:

1. MTA's request for a preliminary injunction is **GRANTED**.

2. The Respondents each shall be enjoined and restrained—whether alone or in concert with others—from:
a) Competing in an activity that has the effect of directing business away from MTA in Kansas, Missouri, Nebraska, or Iowa. This includes rendering services, advice, or aid to third parties or companies that could compete with MTA, including "marketing" services;
b) Disclosing or using MTA's confidential information as defined in the agreements;
c) Interfering with MTA's substantial relationships with its prospective or existing customers.

3. Within 30 days, Respondents shall advise, in writing, to all MTA customers and prospects with whom they have done or attempted to do business since 2008, that they are not affiliated in any respect with MTA and may not accept business from them in violation of the non-compete, non-solicitation, and non-disclosure agreements.

4. This Order is effective on all those in active concert or participation with Respondents, including Advanced Compliance Solutions, LLC and The William Rowland Corporation, and all employees and agents thereof.

5. This Order shall be effective upon the filing of a surety or cash bond in the amount of $10,000.00 approved by the Clerk of the Court for the Middle District of Florida.

6. This Order shall not have the effect of extending or modifying any dates or periods of time contained in the respective agreements, and the applicable portions of this Order shall terminate in accord with the terms and conditions contained in the respective agreements.

7. The Parties are hereby ordered to mediate this case within 60 days of the entry of this Order.

8. MTA's request for a preliminary injunction is **DENIED** with respect to relief sought for Respondents' interference with suppliers, to the extent Respondents' interactions and dealings with suppliers does not utilize MTA's confidential information.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 18th day of February, 2014.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record