UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALFRED MOON, ALFRED MOON, JR.,
CHERYL MOON and MEGAN WHITE,

    Plaintiffs/Counter-Defendants,

v.                                       CASE NO. 8: 13-cv-02782-EAK-EAJ

MEDICAL TECHNOLOGY ASSOCIATES,
INC.,

    Defendant/Counter-Claimant.
_____/

## ORDER

This cause comes before the Court on Plaintiffs' Motion for Partial Summary Judgment, (Doc. 103), filed December 5, 2014, and Defendant's Response in Opposition, (Doc. 109), filed December 19, 2014. For the reasons that follow, Plaintiffs' Motion is **GRANTED** in **PART**.

## BACKGROUND

Medical Technology Associates, Inc. ("MTA") is a national healthcare compliancy testing, service, and equipment provider, with offices and service centers located throughout the United States. MTA provides medical gas pipeline equipment, repairs, and services to numerous businesses in the healthcare community, as well as system testing and construction certification, preventative maintenance programs, medical gas pipeline full system repair and service, medical air compressor and vacuum pump rebuild services, and ventilation surveys of critical care areas, patient rooms, operating rooms, and laboratories. MTA also markets and sells medical gas plumbing certification courses.

On July 7, 2008, MTA purchased Moon Medical, Inc.'s ("Moon Medical") tangible and intangible assets, including goodwill and its entire list of customers from Mr. Alfred Moon ("Mr.

Moon") and Mrs. Cheryl Moon ("Mrs. Moon")—the sole shareholders, directors, and officers at Moon Medical. Mr. and Mrs. Moon, their daughter Megan White ("Ms. White"), and their son Alfred "Chip" Moon, Jr. ("Mr. C. Moon") were all employees of Moon Medical.

As part of this transaction, MTA employed the Plaintiffs: Mr. Moon became regional manager for MTA's Midwest region, which included Kansas, Missouri, Nebraska, and Iowa. MTA later promoted Mr. Moon to director of field development, which had a national scope. MTA employed Mrs. Moon in an administrative capacity, in which Mrs. Moon primarily produced reports and answered phones. Mrs. Moon also worked on project-related work for Blake Petrunick, then CEO of MTA. Mrs. Moon had little-to-no contact with customers. MTA employed Ms. White as the bid and special sales/project management, where she handled bidding, inside sales, scheduling, and customer service. MTA initially employed Mr. C. Moon in the position of field technician for medical gas verifications, and later promoted him to facility sales, in which he conducted certifications and annual inspections. The Plaintiffs were responsible for MTA's Midwest Region, although each individual also worked for particular longtime customers of Moon Medical. Mrs. Moon's employment with MTA ended on May 31, 2010. Mr. Moon, Ms. White, and Mr. C. Moon resigned from MTA employment by October 2013.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, discovery, disclosure materials on file, and any affidavits demonstrate there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

> The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson, 477 U.S. at 248. However, if the evidence is merely colorable…or is not significantly probative…summary judgment may be granted. Id. at 249–250.

## ANALYSIS

### I. Damages

Plaintiffs first move for summary judgment on damages. Plaintiffs contend MTA failed to offer any evidence of damages and have not provided any reasonable means to calculate the alleged damages. (Doc. 103). MTA opposes this motion, and asserts it has provided "overwhelming" evidence of significant damages, as well as an approximation method. (Doc. 109).

Generally, the aggrieved party in a breach of noncompetition agreement case seeks lost profits as the measure of damages. Camel Investments, Inc. v. Webber, 468 So.2d 340, 342 (Fla. Dist. Ct. App. 1985). Lost profits, however, are not the only recoverable damages; the measure of damages is "the actual damages suffered as a result of the breach[.]" Id. (citing Collier v. Crane Inspection and Certification Bureau, Inc., 382 So.2d 424 (Fla. Dist. Ct. App. 1980)). "There are two generally recognized methods of proving lost profits: (1) the before and after theory and (2) the yardstick test." G.M. Brod & Co., Inc. v. U.S. Home Corp., 759 F.2d 1526, 1538 (11th Cir. 1985) (quoting Lehrman v. Gulf Oil Corporation, 500 F.2d 659, 667 (5th Cir. 1974)); see 4 Corners Insurance, Inc. v. Sun Publications of Florida, Inc., 5 So.3d 780, 783 (Fla. Dist. Ct. App. 2009)

(citing G.M. Brod & Co., 759 F.2d at 1538). "The before and after theory compares the plaintiff's profit record prior to the violation with that subsequent to it." Lehrman, 500 F.2d at 667. The yardstick test is often employed when a plaintiff "is driven out of business before he is able to compile an earnings record sufficient to allow estimation of profits." Id. A plaintiff's method of proof may not strictly adhere to either method; therefore, "while damages may not be determined by mere speculation or guess, it will be enough if the evidence show(s) the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." Lehrman, 500 F.2d at 668 (citing Story Parchment Co. v. Paterson Parchment Co., 282 U.S. 555, 563 (1931)).

Plaintiffs urge the Court to find that the competitive bidding process, lack of exclusive contracts, unpredictable competition and market conditions, poor customer service, and supply chain issues could, taken as a whole, explain MTA's drop in revenue, and that any damages, i.e., lost profits, are "likely" attributable to this non-exhaustive list. (Doc. 103). Plaintiffs further seek to preclude damages based on MTA's lack of expert and discovery disclosures, which, Plaintiffs contend, result in speculative and, by nature, unrecoverable damages. (Doc. 103). MTA shies from the lack-of-expert argument, and, rather cites to damages testimony this Court previously heard at the October 26 and 27 injunction hearing, "which included e-mails, correspondence, quotes, invoices, and checks." (Doc. 109). These "included specific quotes from the Moons to MTA's customers that resulted in the Moons wrongfully accepting MTA's customers' business and revenue" that is evidenced in the invoices the Moons sent to customers. (Doc. 109). MTA further distinguishes many of the circumstances the Plaintiffs attribute to lost profits. (Doc. 109).

While the existence of MTA's damages might result from poor customer service, market conditions, and other factors, that decision is left to the trier of fact to weigh against MTA's contentions and distinctions, not the Court at this stage. Turning to the allegedly speculative nature

of MTA's damages calculation, disputed, material facts exist in the record that would preclude a finding that <u>all</u> of the damages are speculative. For example, MTA's employee testified that revenue from <u>some</u> of MTA's suppliers and business relationships "clearly...went directly to [the Plaintiffs]" based on documents the Plaintiffs produced and the relationships the Plaintiffs had with those businesses. (Doc. 103 at 10). While MTA's employee was heavily impeached and conceded she could not testify that revenue from <u>all</u> of the businesses went to the Plaintiffs, her testimony still established that <u>some</u> of the revenue "clearly" went from MTA to Plaintiffs. These material factual discrepancies preclude a summary judgment determination on damages; however, the absence of an expert presents an exceptional challenge, and nothing from this order should be construed to presume that portions of that evidence and testimony are not subject to pretrial motions. Plaintiffs' request for summary judgment on the issue of damages is **DENIED**.

### II.  Mrs. Moon's Owner-Employee Non-Compete Agreement

Plaintiffs next move for summary judgment on the enforceability of Mrs. Moon's owner-employee non-compete agreement due to expiration because the agreements are unreasonable under Florida law; essentially, the agreements were drafted as though Mrs. Moon were an employee rather than an owner. (Doc. 103). MTA opposes this motion, and asserts the evidence establishes the agreements were for an owner rather than an employee. (Doc. 109).

To determine the reasonableness of restrictive covenants, Florida law applies the following rebuttable presumptions to post-term restrictive covenants. In the case of an employee, agent, or independent contractor, any constraint six months or less in duration is presumed reasonable, and any constraint two years or greater in duration is presumed unreasonable. Fla. Stat. § 542.335(1)(d)(1). In the case of the seller, any constraint three years or less in duration is presumed reasonable, and any constraint seven years or greater in duration is presumed unreasonable. Fla.

Stat. § 542.335(1)(d)(3). The operative analysis is whether the restrictive covenants sought to be enforced were associated with the sale of the assets, shares, partnership interest, equity interest, or membership of the corporation. Fla. Stat. § 542.335(1)(d)(1)(a)–(e). If the restrictive covenants were associated with the sale of any of the foregoing, the rebuttable presumptions under Section 542.335(1)(d)(1), Florida Statutes, (i.e., employee), would not apply, and only the rebuttable presumptions under Section 542.335(1)(d)(3), Florida Statutes, would remain for consideration.

Sufficient disputed, material facts exist to preclude summary judgment on this issue. While Plaintiffs are correct that Mrs. Moon's restrictive covenants were not enumerated in the purchase and sale agreement, and Mrs. Moon's agreement differs from Mr. Moon's on the non-compete provisions, Mrs. Moon did testify that her understanding of "good and valuable consideration" in the non-compete agreements referred to the sale of her interest in the company. That testimony alone would preclude summary judgment on this issue; however, MTA's former CEO Blake Petrunick testified to the discussions during the purchase negotiations and subsequent formation of contracts and restrictive covenants, detailed in MTA's Response. (Doc. 109). That testimony, combined with Mrs. Moon's testimony, create disputed, material facts. Plaintiffs' request for summary judgment on the issue of Mrs. Moon's non-compete agreement is **DENIED**.

### III. Mr. Moon's, Mr. C. Moon's, and Ms. White's Non-Compete Agreements

Plaintiffs finally move for summary judgment on the breach of Mr. Moon's, Mr. C. Moon's, and Ms. White's non-compete agreements because MTA has not provided any material evidence to prove they competed in the four-state geographic location. (Doc. 103). MTA opposes the motion, and cites examples of competition in the four-state geographic region that would create disputed, material facts to preclude summary judgment. (Doc. 109).

To defeat summary judgment, an adverse party "must set forth specific facts showing that there is a genuine issue for trial," through affidavits and other competent evidence. Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) (citing Fed. R. Civ. P. 56(e)). "Speculation or conjecture cannot create a genuine issue of material fact, and a 'mere scintilla of evidence' in support of the nonmoving party cannot overcome a motion for summary judgment." S.E.C. v. Monterosso, 756 F.3d 1326, 1333 (11th Cir. 2014) (quoting Young v. City of Palm Bay, 358 F.3d 859, 860 (11th Cir. 2004)).

Plaintiffs concede certain disputed, material facts exist to preclude summary judgment with respect to the confidentiality, non-solicitation, and non-disparagement agreements; however, Plaintiffs assert Mr. Moon, Mr. C. Moon, and Ms. White did not breach or violate the non-competition provisions of their agreements. (Doc. 103). This provision forbids competition in Kansas, Missouri, Nebraska, and Iowa. (Doc. 103). MTA claims all three individuals violated the non-competition clauses of their respective contracts, specifically:

> Employee shall not, directly or indirectly, prepare to compete or compete against Employer (including engaging in any activity that could have the effect of directing business away from Employer) ... or establish any business relationship ... (including but not limited to ... as an owner ... ) with any business entity ... in competition or which plans to be in competition with Employer ....
>
> Employer and Employee agree that the prohibition on competition applies throughout the States of Kansas, Missouri, Nebraska, and Iowa ....

(Doc. 109). MTA claims "Mr. Moon distributed [Plaintiffs'] new company's business cards at Shawnee Mission Medical Center, a customer in Kansas with whom MTA has a substantial relationship." (Doc. 109). This necessitated an MTA employee to reassure Shawnee Mission Medical Center that MTA retained the ability to service the customer. (Doc. 109). Additionally, MTA claims Mr. Moon spoke with a maintenance manager of an MTA customer based in

Nebraska, and "indicated" his agreement with MTA had expired and he could conduct business with that customer. (Doc. 109 at 18). Finally, MTA offers excerpts from the declaration of Dan Axtel, the chairman of the board of a plumbing company located in Missouri, who swore Mr. Moon stated "that, although 'they could not do business with Lexington Plumbing for the time being ... Al gave me his new business card and told me he would keep in touch.'" (Doc. 109).

First, the paraphrased and quoted material MTA cites in the Response regarding Mr. Moon's interactions with Dan Axtel was taken severely out of context and mischaracterizes the actual testimony provided. The exact text from MTA's Response is as follows:

> Further, the Moons filed the declaration of Dan Axtel, Chairman of the Board of Lexington Plumbing, located in Kansas City, Missouri, who stated that although "they could not do business with Lexington Plumbing for the time being ... Al gave me his new business card and told me he would keep in touch."

(Doc. 109 at 19) (emphasis added). The complete text from the affidavit is as follows:

> We did discuss the possibility that Advanced Compliance Solutions, his new company, might start selling different product lines or different services that do not compete with anything MTA is currently doing. But ultimately, Al explained that since his new company had yet to identify those product lines, they could not do business with Lexington Plumbing for the time being. At that point, Al gave me his new business card and told me he would keep in touch.

(Doc. 18-8 at ¶6). Dan Axtel clearly stated he and Mr. Moon spoke about product lines and services "that do not compete with anything MTA is currently doing." (Doc. 18-8 at ¶6). There is no mincing of words, and there is no portion of the affidavit left to interpretation.[1] This is not evidence of a material fact in dispute; rather, it bolsters Plaintiffs' arguments.

---

[1] Florida's Rules of Professional Conduct require that a "lawyer shall not...assert...an issue...unless there is a basis in law and fact for doing so that is not frivolous[.]" Fla. R. Prof'l. Conduct R. 4-3.1.

Second, evidence of Mr. Moon's distribution of business cards at Shawnee Mission Medical Center in Kansas is based on information from Dave Fletcher—the Center's Secretary of Maintenance. The only evidence cited for this conversation is from the affidavit of Clark Zeit, an MTA employee, who swore that Mr. Fletcher "informed [Mr. Zeit] that Mr. Moon had recently come to the hospital and handed out business cards on behalf of his new company." (Doc. 9 at 91, ¶16). Any inferences or conclusions beyond those representations with respect to Mr. Moon's intentions and potential competitive behavior is purely speculative. While Mr. Zeit took it upon himself to "reassure[] Mr. Fletcher that everything was alright at MTA and that the Moon's departure would not affect [his] employment or the services Shawnee Mission Medical Center expects from MTA," the testimonial evidence is, at best, a mere scintilla of evidence, but does not create a material factual dispute that Mr. Moon attempted to compete in Kansas.

Finally, evidence that Mr. Moon "indicated" his non-compete agreement expired came from a conversation with David Crook—the maintenance manager of Kearney Regional Medical Center, located in Nebraska. The only evidence cited for this conversation comes from Kenneth Spies, an MTA employer, who, in an affidavit, swore that Mr. Crook:

> volunteered to [Mr. Spies] that Mr. Moon had contacted him and told him that he formed a new company. Mr. Crook understood Mr. Moon to indicate that Mr. Moon's non-compete contract with MTA had expired and that Kearney Regional Medical Center could conduct business with Mr. Moon and his new company.

(Doc. # 16-1, ¶5). Similar to the preceding analysis, any inferences or conclusions drawn from the paraphrased conversation is purely speculative, and MTA offers no significant clarification, other than that employee's assurances to Mr. Crook that MTA is capable of fulfilling the needed services without the Moons. There is no evidence introduced to create a material factual dispute that Mr. Moon, Mr. C. Moon, and Ms. White competed in Nebraska. Plaintiffs' request for summary

judgment on the issue of the breach of the non-compete agreements for Mr. Moon, Mr. C. Moon, and Ms. White in the prohibited geographic region is **GRANTED**. Accordingly, it is

**ORDERED** and **ADJUDGED** that Plaintiffs' Motion for Partial Summary Judgment is **GRANTED** in **PART** for the reasons stated above.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 17th day of March, 2015.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record