UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALFRED MOON, ALFRED MOON, JR.,
CHERYL MOON and MEGAN WHITE,

    Plaintiffs/Counter-Defendants,

v.                                                        CASE NO. 8: 13-cv-02782-EAK-EAJ

MEDICAL TECHNOLOGY ASSOCIATES,
INC.,

    Defendant/Counter-Claimant.
_____/

## ORDER

This cause comes before the Court on Defendant's Motion for Partial Summary Judgment, (Doc. 104), filed December 5, 2014, and Plaintiffs' Response in Opposition, (Doc. 113), filed December 19, 2014. For the reasons that follow, Defendant's Motion is **DENIED**.

## BACKGROUND

Medical Technology Associates, Inc. ("MTA") is a national healthcare compliancy testing, service, and equipment provider, with offices and service centers located throughout the United States. MTA provides medical gas pipeline equipment, repairs, and services to numerous businesses in the healthcare community, as well as system testing and construction certification, preventative maintenance programs, medical gas pipeline full system repair and service, medical air compressor and vacuum pump rebuild services, and ventilation surveys of critical care areas, patient rooms, operating rooms, and laboratories. MTA also markets and sells medical gas plumbing certification courses.

On July 7, 2008, MTA purchased Moon Medical, Inc.'s ("Moon Medical") tangible and intangible assets, including goodwill and its entire list of customers from Mr. Alfred Moon ("Mr.

Moon") and Mrs. Cheryl Moon ("Mrs. Moon")—the sole shareholders, directors, and officers at Moon Medical. Mr. and Mrs. Moon, their daughter Megan White ("Ms. White"), and their son Alfred "Chip" Moon, Jr. ("Mr. C. Moon") were all employees of Moon Medical.

As part of this transaction, MTA employed the Plaintiffs: Mr. Moon became regional manager for MTA's Midwest region, which included Kansas, Missouri, Nebraska, and Iowa. MTA later promoted Mr. Moon to director of field development, which had a national scope. MTA employed Mrs. Moon in an administrative capacity, in which Mrs. Moon primarily produced reports and answered phones. Mrs. Moon also worked on project-related work for Blake Petrunick, then CEO of MTA. Mrs. Moon had little-to-no contact with customers. MTA employed Ms. White as the bid and special sales/project management, where she handled bidding, inside sales, scheduling, and customer service. MTA initially employed Mr. C. Moon in the position of field technician for medical gas verifications, and later promoted him to facility sales, in which he conducted certifications and annual inspections. The Plaintiffs were responsible for MTA's Midwest Region, although each individual also worked for particular longtime customers of Moon Medical. Mrs. Moon's employment with MTA ended on May 31, 2010. Mr. Moon, Ms. White, and Mr. C. Moon resigned from MTA employment by October 2013.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, discovery, disclosure materials on file, and any affidavits demonstrate there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

> The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson, 477 U.S. at 248. However, if the evidence is merely colorable...or is not significantly probative...summary judgment may be granted. Id. at 249–250.

## ANALYSIS

### I. Plaintiffs' Alleged Breaches

MTA first moves for summary judgment on Plaintiffs' alleged breaches. Plaintiffs raise factual and legal disputes to MTA's contentions. Each will be taken in turn.

### A. Mrs. Moon

MTA alleges Mrs. Moon breached her enforceable contracts by rendering services to, and engaging in, a business whose products or activities compete in whole or in part with MTA in any county in which MTA sold products or services during the sixty months immediately preceding Mrs. Moon's execution of the agreements. (Doc. 104). Plaintiffs contend both that Mrs. Moon's material contract is unenforceable due to temporal limitations and that any alleged conduct would not violate the agreements because the scope of business is in dispute. (Doc. 113).

Disputed material facts exist to preclude summary judgment on the enforceability of Mrs. Moon's contracts. As discussed in this Court's Order granting in part Plaintiffs' Motion for Partial Summary Judgment, while the contracts for Mr. and Mrs. Moon were drafted differently to include sale provisions in Mr. Moon's but not Mrs. Moon's restrictive covenants, Mrs. Moon and at least

one MTA employee testified Mrs. Moon understood her restrictive covenants were considered in part for the sale of Moon Medical. Accordingly, the finders of fact must determine the enforceability of Mrs. Moon's contracts and restrictive covenants.

Even if the Court were to determine the contracts and restrictive covenants were enforceable as a matter of law, the finders of fact would still be required to determine whether a breach occurred. MTA claims "it is irrelevant whether MTA provided training in [certain] counties." (Doc. 104 at 8). Plaintiffs, however, dispute MTA's contention that it marketed and sold training courses in the Midwest; through testimony of MTA's corporate representative Nancy Hunter, Plaintiffs assert MTA employed only one individual capable of conducting training courses, and those courses were only offered in Florida, Colorado, and the Bahamas during the time period leading up to MTA's acquisition of Moon Medical. (Doc. 112 at ¶44). Because the scope of the business is clearly disputed and the record disputes cannot definitively resolve the matter without making a factual determination, summary judgment on this matter must be denied. See FC Online Mktg., Inc. v. Costa, 2014 WL 6473770 at *7 (M.D. Fla. November 18, 2014).

**B. Mr. Moon, Mr. C. Moon, and Ms. White**

**i. Confidential Information**

MTA claims Plaintiffs are using confidential information to gain an unfair competitive advantage, in contravention of the employment agreements and restrictive covenants. (Doc. 104 at 9–10). Plaintiffs dispute the information is confidential. (Doc. 113). At the injunction hearing, this Court previously heard and analyzed evidence and testimony relating to the confidential nature of MTA's customer information and pricing—the same customer information and pricing at issue here—and, therefore, the Court incorporates by reference that analysis. (Doc. 125). For the reasons previously discussed, as well as Plaintiffs' recitation of disputed material facts, the Court

finds material facts are in dispute that preclude summary judgment. The record evidence presents numerous material factual conflicts: the Plaintiffs and certain MTA employees testified the customer information and pricing was not necessarily always confidential, and that some clients or customers would provide customer information and pricing in "last look" scenarios; Ms. Hunter testified she could not definitively state what information—if any—Plaintiffs took from MTA via a USB device; and publicly-available databases provide some of the allegedly confidential information. The request for summary judgment is **DENIED**.

### ii. Substantial Customer Relationships

MTA next claims it is entitled to protection of the customers with which it has a substantial relationship. MTA argues an "active, ongoing relationship" with customers "[w]here an employee...gains substantial knowledge of his former employer's customers, their purchasing history, and their needs and specifications" satisfies the test for substantial customer relationships. (Doc. 104 at 12). Plaintiffs argue the industry is based on bidding and, therefore, substantial relationships cannot exist, or that, in the alternative, disputed material facts exist to preclude summary judgment. (Doc. 113). At the injunction hearing, this Court previously heard and analyzed evidence and testimony relating to MTA's customer relationships and, therefore, the Court incorporates by reference that analysis. (Doc. 125). For the reasons previously discussed, as well as Plaintiffs' recitation of disputed material facts, the Court finds material facts are in dispute that preclude summary judgment. The exhibits MTA submitted for substantial customer relationships and the methodology by which they were created were heavily impeached during the injunction hearings. Some of the alleged substantial customer relationships existed with the Federal Government—an entity with which MTA could not have a protected interest; Ms. Hunter acknowledged that other entities may not have had any interactions with Plaintiffs; some entities

released the bidding information—that which MTA considers confidential—to competing companies to obtain the lowest bid; and representatives for some companies stated the lack of customer service and credit terms were responsible for ceased business. For the reasons previously stated in the Court's Order denying MTA's preliminary injunction, as well as the disputed material facts Plaintiffs cited in their Response, (Doc. 113), this request for summary judgment is **DENIED**.

### iii. Disparagement

MTA finally argues Mr. Moon disparaged MTA when he stated MTA sought to stop him from working anywhere in the country, then later admitted this statement was untrue. (Doc. 104). Plaintiffs clarify Mr. Moon's statement and admission to mean that MTA only attempted to restrict his ability to work in 43 of the 48 continental United States. (Doc. 113). The intent of Mr. Moon's statement is left for a factual determination by the finders of fact. Summary judgment is **DENIED**.

### C. Injunctive Relief

This Court has extensively considered MTA's request for injunctive relief. On January 30, 2015, this Court denied MTA's request for preliminary injunction, (Doc. 125), and the Court incorporates by reference the analysis provided in said order. MTA's newest motion for injunctive relief does not shore up or quell the Court's previous concerns with speculative damages and injuries, especially given the conflicts in the record evidence and standard at this stage of litigation. Therefore, MTA's request for injunctive relief is **DENIED**.

### II. Fiduciary Duties

MTA finally moves for summary judgment on the issue of fiduciary duties the Plaintiffs owed to MTA. MTA contends the Plaintiffs "owed a duty to MTA to exercise diligence and good faith in matters related to their employment...[which] prohibited the [Plaintiffs] from engaging in disloyal acts in competition against MTA." (Doc. 104 at 25). MTA alleges "the [Plaintiffs] not

only referred MTA customers to Mrs. Moon for medical gas training, but also instructed subordinates to do the same." (Doc. 104 at 25). These actions, according to MTA, directly contravene the Plaintiffs' duty of loyalty owed to MTA. The Plaintiffs admit to diverting the business, but state former MTA CEO Blake Petrunick not only knew about this practice, but encouraged it. (Doc. 113 at 20–21). Plaintiffs offer testimony and record evidence suggesting the complained-of behavior did not compete with MTA and MTA condoned the behavior because it created otherwise non-existent competition for an MTA competitor in Oklahoma. (Doc. 113). These material factual dispute preclude summary judgment on breach of fiduciary duties. Accordingly, it is

**ORDERED** and **ADJUDGED** that Defendant's Motion for Partial Summary Judgment is **DENIED** for the reasons stated above.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 17th day of March, 2015.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record